## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ANDREW HARVEY JR.                                    CIVIL ACTION
A/K/A MONTRELL HARVEY

VERSUS                                               NO. 13-2994

N. BURL CAIN (WARDEN)                                SECTION "A"(2)


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.   STATE COURT PROCEDURAL BACKGROUND

The petitioner, Andrew Harvey Jr. a/k/a Montrell Harvey, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On June 9, 2008, Harvey was charged by bill of information in Tangipahoa Parish with one count of armed robbery.[3] The Louisiana First Circuit Court of Appeal summarized the facts of the case as determined at trial as follows:

> On or about August 24, 2007, two black males entered the office building of Southeast Recycling, a scrap yard in Hammond, Louisiana. Carl Jack Turner was using his telephone when the subjects entered his office, adjacent to the lobby.  The two subjects waited five to ten seconds and then exited Turner's office.  According to Turner, the subjects later re-entered the office armed with a gun.  The taller male subject, holding the gun, demanded money.  Turner pointed toward the cash drawer in the lobby.  The subjects were unable to open the cash drawer and ordered Turner to do so.  After Turner opened the drawer, the manager, Larry Ramsey, entered the lobby.  The gunman ordered Ramsey to leave, and he complied. The gunman removed approximately $800.00 to $1,000.00 from the cash drawer, and the subjects exited the building.  Turner then called the police.
>
> Ramsey later identified defendant as the gunman and Byron B. Washington as the third involved person, the driver of the getaway vehicle. Washington, defendant's cousin, also confirmed defendant's identity as the gunman and identified Adrian White as his accomplice inside the building.

(footnote omitted) State v. Harvey, 24 So.3d 1034 (La. App. 1st Cir. 2009) (Table); State v. Harvey, No. 2009-KA-0749, 2009 WL 3447428, at *1 (La. App. 1st Cir. Oct. 27,

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 3, Bill of Information, 6/9/08.

2009); State Record Volume 2 of 3, Louisiana First Circuit Court of Appeal Opinion, 2009-KA-0749, pp. 2-3, October 27, 2009.

Harvey was tried before a jury on September 17 and 18, 2008, and was found guilty as charged.[4] At a hearing held on November 18, 2008, the state trial court denied Harvey's pro se motion to terminate an illegal conviction and his counsel-filed motions for post-verdict judgment of acquittal, new trial and arrest of judgment.[5] The court sentenced Harvey on December 17, 2008, to serve fifty (50) years in prison at hard labor without benefit of parole, probation or suspension of sentence.[6] The court later denied Harvey's numerous motions to set aside the conviction and to reconsider the sentence.[7]

Harvey's conviction and sentence were affirmed on direct appeal by the Louisiana First Circuit on October 27, 2009, when the court found no merit in his claim of

---

[4]St. Rec. Vol. 1 of 3, Trial Minutes, 9/17/08; Trial Minutes, 9/18/08; Jury Verdict, 9/18/08; Voir Dire Transcript, 9/17/08; Trial Transcript, 9/18/08; St. Rec. Vol. 2 of 3, Trial Transcript (continued), 9/18/08.

[5]St. Rec. Vol. 1 of 3, Hearing Minutes, 11/18/08; Motion to Terminate Illegal Conviction, 11/5/08; Motion in Arrest of Judgment, 11/12/08; Motion for Post-Verdict Judgment of Acquittal, 11/12/08; Motion for New Trial, 11/12/08; St. Rec. Vol. 2 of 3, Hearing Transcript, 11/18/08.

[6]St. Rec. Vol. 1 of 3, Sentencing Minutes, 12/17/08; St. Rec. Vol. 2 of 3, Sentencing Transcript, 12/17/08.

[7]St. Rec. Vol. 1 of 3, Motion to Reconsider Sentence, 12/23/08; Trial Court Order, 4/9/09; see also Trial Court Order, 1/20/09; Hearing Minutes, 3/17/09; Motion to Set Aside Conviction and Dismiss Prosecution, 1/8/09 (dated 1/6/09); Motion for New Trial, 1/12/09; St. Rec. Vol. 2 of 3, Motion to Vacate Sentence, 2/23/09 (dated 2/15/09); Trial Court Order, 2/26/09; Motion for Reconsideration of Sentence, 4/1/09; Trial Court Order, 4/1/09. Harvey apparently sought review of the denial of one or more of these motions and then voluntarily dismissed his writ application in the Louisiana First Circuit while his direct appeal was pending. See St. Rec. Vol. 2 of 3, 1st Cir. Order, 2009-KW-0143, 3/17/09.

insufficient evidence to support the verdict.[8]  His conviction and sentence became final

30 days later, on Monday, November 30, 2009,[9] when he did not seek rehearing or timely

review in the Louisiana Supreme Court.[10]  Butler v. Cain, 533 F.3d 314 (5th Cir. 2008)

(citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when

the state defendant does not timely proceed to the next available step in an appeal

process)).

On February 3, 2010, Harvey filed a petition for post-conviction relief, asserting

the following grounds:[11] (1) The prosecutor made an improper reference in his closing

arguments to Harvey's failure to testify, and his counsel was ineffective when he failed

to object to the prosecutor's comment or seek a mistrial. (2) The prosecution admitted

evidence of his prior convictions without giving proper notice. (3) Defense counsel was

ineffective when he met with Harvey only once before trial, failed to investigate and

interview potential witnesses, failed to challenge the credibility of the State's witnesses

---

[8]State v. Harvey, 24 So.3d at 1034; State v. Harvey, 2009 WL 3447428, at *1; St. Rec. Vol. 2 of 3, 1st Cir. Opinion, 2009-KA-0749, 10/27/09; St. Rec. Vol. 3 of 3, Appeal Brief, 2009-KA-0749.

[9]The 30th day was Thursday, November 26, 2009, the legal holiday of Thanksgiving. La. Rev. Stat. § 1:55. Pursuant to La. Code Crim. P. art. 13, the end of the period then became the next non-holiday and non-weekend day. The next day, Friday, November 27, 2009, however, was declared a holiday by Governor Bobby Jindal, La. Rev. Stat. § 1:55(B)(3); La. Exec. Proclamation No. 63 BJ 2009 (2009). Therefore, Harvey's conviction and sentence became final the following Monday, November 30, 2009.

[10]Pursuant to La. S. Ct. R. X§5(a), petitioner had 30 days from issuance of the appellate court's opinion to file a timely writ application in the Louisiana Supreme Court, which he did not do.

[11]St. Rec. Vol. 2 of 3, Petition for Post-Conviction Relief, 2/3/10.

4

and made a comment placing Harvey at the scene of the crime. (4) He was denied a preliminary hearing before the bill of information was filed. The state trial court denied relief at a hearing held on March 9, 2010.[12]

The Louisiana First Circuit denied Harvey's subsequent writ application on May 24, 2010, noting Harvey's failure to attach the appropriate exhibits.[13] Harvey's untimely[14] writ application to the Louisiana Supreme Court was denied by that court without stated reasons on October 7, 2011.[15]

In the meantime, Harvey submitted a second application for post-conviction relief to the state trial court on January 27, 2011, asserting the following arguments:[16] (1) The prosecution failed to disclose material evidence to the jury, including evidence related to witness credibility. (2) The prosecution (a) used false and perjured testimony of Byron Washington and (b) failed to correct the testimony during closing arguments. (3) The prosecution failed to disclose impeachment evidence against a material witness who

---

[12]St. Rec. Vol. 1 of 3, Hearing Minutes, 3/9/10.

[13]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2010-KW-0496, 5/24/10.

[14]Pursuant to La. S. Ct. R. X§5(a), petitioner had 30 days from the issuance of the appellate court's opinion to file a timely writ application in the Louisiana Supreme Court, which he did not do.

[15]State ex rel. Harvey v. State, 71 So.3d 305 (La. 2011); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2010-OK-2374, 10/7/11; La. S. Ct. Writ Application, 10-OK-2374, 10/20/10 (dated 10/4/10); La. S. Ct. Supplemental Writ Application, 10-OK-2374, 5/19/10; St. Rec. Vol. 2 of 3, La. S. Ct. Letter, 2010-OK-2374, 10/20/10 (showing postmark 10/5/10).

[16]St. Rec. Vol. 2 of 3, Application for Post-Conviction Relief, 2/1/11 (dated 1/27/11).

denied testifying in exchange for leniency. (4) The prosecutor improperly vouched for the credibility of the State's witnesses.[17]

The state trial court denied Harvey's first motion to amend the application to include claims of an invalid bill of information and lack of jurisdiction to convict.[18] The trial court later appointed post-conviction counsel and held several interim hearings, after which Harvey filed a pro se supplemental application on March 6, 2012, adding claims of improper or tainted evidence, including use of out-of-court hearsay identification evidence and denial of the right to trial by judge.[19]

On April 25, 2012, the state trial court held a full evidentiary hearing after which it denied Harvey's post-conviction application.[20]  The Louisiana First Circuit and the

---

[17]On February 25, 2011, Harvey filed a pleading entitled "Habeas Corpus" seeking a hearing and review of his claims, and the state trial court denied the motion on March 10, 2011. St. Rec. Vol. 2 of 3, Habeas Corpus, 3/3/11 (dated 2/25/11); Trial Court Order, 3/10/11. The court also denied Harvey's request to compel an answer from the district attorney.  St. Rec. Vol. 2 of 3, Trial Court Order, 3/24/11. The Louisiana First Circuit denied Harvey's applications for writ of mandamus related to these rulings on July 18, 2011, and February 13, 2012.  St. Rec. Vol. 3 of 3, 1st Cir. Order, 2011-KW-0685, 7/18/11; St. Rec. Vol. 2 of 3, 1st Cir. Order, 2011-KW-2105, 2/13/12.  The Louisiana Supreme Court also denied relief related to the 2011 appellate court ruling.  St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2011-KH-1775, 4/27/12; La. S. Ct. Writ Application, 11-KH-1775, 8/18/11 (dated 8/15/11).

[18]St. Rec. Vol. 2 of 3, Motion to Amend, 4/14/11; Trial Court Order, 4/18/11.

[19]St. Rec. Vol. 2 of 3, Supplemental Application, 3/6/12 (dated 3/2/12); Hearing Transcript, 1/31/12; Hearing Transcript, 3/27/12.

[20]St. Rec. Vol. 1 of 3, Hearing Minutes, 4/25/12; St. Rec. Vol. 2 of 3, Hearing Transcript, 4/25/12.

Louisiana Supreme Court denied Harvey's related writ applications without stated reasons on October 9, 2012 and April 1, 2013, respectively.[21]

## II.   CURRENT FEDERAL HABEAS PETITION[22]

On April 29, 2013, Harvey filed a petition for federal habeas corpus relief in the United States District Court for the Middle District of Louisiana in which he asserts the following claims:[23] (1) The State knowingly used and failed to correct the false and perjured testimony of Byron Washington, which was not consistent with the statements of Larry Ramsey. (2) His right of confrontation was denied where the State used the out-of-court identification statement relied on by Larry Ramsey when the statement was not subject to cross-examination. (3) The State failed to provide him with impeachment evidence related to witnesses at the post-conviction evidentiary hearing in violation of

---

[21]State ex rel. Harvey v. State, 86 So.3d 615, (La. 2012); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2012-KH-2435, 4/1/13; La. S. Ct. Writ Application, 12-KH-2435, 11/14/12 (postal metered 11/7/12, dated 11/5/12); 1st Cir. Order, 2012-KW-1239, 10/9/12.

[22]Harvey previously filed a federal habeas corpus petition on May 21, 2010.  Civ. Action No. 10-1495 "A"(6). In that case, this court granted that State's motion and dismissed Harvey's petition without prejudice for failure to exhaust, because, at the time, Harvey had failed to seek or complete review of any of his claims in the Louisiana Supreme Court.  Civ. A. No. 10-1495, Rec. Doc. Nos. 14, 16, 17.  The United States Fifth Circuit dismissed Harvey's appeal for lack of jurisdiction. Id., Rec. Doc. No. 20. Therefore, Harvey's current petition is not a prohibited second or successive petition that would require certification from the circuit court prior to filing.  Strickland v. Thaler, 701 F.3d 171, 173 (5th Cir. 2012) (a subsequent petition is not successive where the prior petition was dismissed without prejudice for failure to exhaust) (citing Slack v. McDaniel, 529 U.S. 473, 487 (2000), In re Gasery, 116 F.3d 1051, 1052 (5th Cir. 1997)).

[23]Rec. Doc. No. 1.

7

Brady v. Maryland, 373 U.S. 83, 87 (1963).[24] (4) Defense counsel provided ineffective assistance when he failed to object to the prejudicial hearsay identification testimony, failed to investigate and prepare for trial and incriminated Harvey during the closing arguments.

The State filed an answer and memorandum in opposition to Harvey's petition arguing that his first claim was not exhausted in the state courts, his third claim is not cognizable on federal habeas review and his second and fourth claims are without merit.[25]

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[26] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[24]In Brady, 373 U.S. at 87, the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

[25]Rec. Doc. Nos. 14.

[26]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Harvey's petition, which, for reasons discussed below, is deemed filed in this court on April 29, 2013.[27]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

I first note that the State apparently concedes the timeliness of the petition.  I also note that its discussion of this issue is inconclusive and contains legal and mathematical errors.[28]  Nevertheless, my review of the record confirms that Harvey's petition was timely filed and that none of his claims were dismissed in the state courts on the basis of procedural default.

_____

[27]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of the Middle District filed Harvey's petition on April 29, 2013.  This also is the date on which Harvey delivered the petition to prison officials for e-mailing to the court as shown by the prison officials' stamp on the face of the pleading.

[28]For example, the discussion erroneously includes suspension of the filing period during pendency of Harvey's first federal habeas petition, which is not a basis for statutory tolling, Duncan v. Walker, 533 U.S. 167, 181-82 (2001), and it fails to apply the applicable mailbox rules, Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

As noted above, the State also argues that Harvey's first claim, alleging the prosecution's use of perjured testimony regarding Washington's culpability and Ramsey's pretrial statements, was not exhausted in the state courts.  However, Harvey's state court pleadings reflect that these arguments were raised in the state trial court in Harvey's supplement to his second state application for post-conviction relief as an underlying basis for his prosecutorial misconduct claim.[29]  Having asserted these arguments again in his subsequent writ application to the Louisiana First Circuit seeking review of the state trial court's denial of relief.[30]   Harvey also squarely raised the arguments to the Louisiana Supreme Court in his related writ application.[31]  Accordingly, the State's exhaustion defense cannot be accepted.

IV.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based

---

[29]See e.g., St. Rec. Vol. 2 of 3, record page 698, Supplemental Petition at p. 5, 3/6/12.

[30]St. Rec. Vol. 3 of 3, Copy 1st Cir. Writ Application, 2012-KW-1239, p. 7, dated 7/16/12.

[31]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 12-KH-2435, 11/14/12.

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on  other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

11

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.    FALSE OR PERJURED TESTIMONY

       Harvey alleges that the prosecution knowingly allowed Byron Washington to

testify that he was not aware that his actions were criminal, which was contrary to pretrial

statements made by Larry Ramsey that tended to show Washington's culpable state of

mind.  At the post-conviction evidentiary hearing, Harvey and his counsel clarified the

argument to also assert that the State must have known that Washington was lying and

12

that he knew he was participating in a crime in light of the fact that Washington had a criminal justice degree.[32]

The state trial court denied relief, refusing to find that the State could have known what Washington knew or that he knew he was participating in a crime. This ruling was affirmed in the cursory denials of Harvey's subsequent writ applications to the Louisiana First Circuit and the Louisiana Supreme Court.

A claim of prosecutorial misconduct, including use of perjured testimony, presents a mixed question of law and fact. Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing United States v. Emueqbunam, 268 F.3d 377, 403-04 (6th Cir. 2001); Jones v. Gibson, 206 F.3d 946, 958 (10th Cir. 2000); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997); United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989)). This court must determine whether the state courts' rulings were contrary to or an unreasonable application of federal law.

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 766 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996). To obtain relief, the defendant must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the

---

[32]St. Rec. Vol. 2 of 3, record pages 788-790, Hearing Transcript, 4/25/12.

testimony was <u>material</u>.  <u>Duncan v. Cockrell</u>, 2003 WL 21545926, at*3 (5th Cir. July 3, 2003); <u>Kirkpatrick v. Whitley</u>, 992 F.2d 491, 497 (5th Cir. 1993).  False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict.  <u>Duncan</u>, 2003 WL 21545926, at*3 (citing <u>Nobles</u>, 127 F.3d at 415).

Harvey has not established that Washington's testimony was actually false in any way or that the prosecution knew it was false. This argument is based on Harvey's mere conclusion that it was false in light of Washington's criminal justice education.  Harvey, however, has not presented anything to challenge Washington's testimony that he was intoxicated and unaware that the crime was about to occur until Harvey and the other robber returned to the car with the gun and money.

Harvey also has failed to demonstrate any conflict in Ramsey's statements or between the testimony of Ramsey and Harvey.  Construed broadly, Harvey's argument appears to be that, because Ramsey told police that Washington's car had no license plate, the lack of a license plate demonstrated Washington's culpable state of mind.  To paraphrase the state trial court's comment, even with a missing license plate, the State could not have known what Washington was thinking.

Furthermore, a possible conflict in testimony does not render the testimony actually false or perjured.  <u>See</u> <u>United States v. Wall</u>, 389 F.3d 457, 473 (5th Cir. 2004), <u>cert. denied</u>, 544 U.S. 978 (2005) ("Wall has not established that McDowell's testimony

14

was actually false.  He has merely shown that Ristau's testimony would establish a conflict in the testimony, a far cry from showing that it was 'actually false.'").  Harvey presents nothing more than routine credibility challenges and a dispute over the appropriate weight to be afforded to testimony.  Such credibility and evidence weight issues frequently arise at trial and are matters solely for the jury to resolve, <u>not</u> for this court to second-guess.

Harvey has offered nothing to support his assertion that Washington lied or that the State knew that Washington did not tell the truth at trial.  Washington's testimony was consistent both before and during trial and would not necessarily have given the prosecutor reason to consider it false.  For all of the foregoing reasons, Harvey has failed to establish that the state courts' denial of relief on this claim was contrary to or an unreasonable application of Supreme Court precedent.  He is not entitled to relief on this claim.

VI.    <u>RIGHT OF CONFRONTATION</u>

Harvey argues that his right of confrontation was denied because the State allowed Larry Ramsey to testify that he based his identification of Harvey on an out-of-court statement made by a person who was not subject to cross-examination. This argument refers to Ramsey's trial testimony that he recognized the gunman as a person he knew only as "ZoomZoom."  Ramsey also testified that he learned from his cousin that

15

ZoomZoom's real name was Andrew Harvey.[33]  Construed broadly, Harvey's argument appears to be that he did not have an opportunity to cross-examine Ramsey's cousin about her statement declaring Harvey to be the person known as ZoomZoom, and he could have used that cross-examination to challenge the credibility of Ramsey's identification.  The state courts denied relief on this claim on post-conviction review after the state trial court found that Ramsey's physical identification of Harvey was based on his personal viewing and knowledge and was independent of any outside information he received.

Claims asserting that a defendant's confrontation rights were violated present a mixed question of law and fact.  Fratta v. Quarterman, 536 F.3d 485, 499 (5th Cir. 2008); Horn v. Quarterman, 508 F.3d 306, 312 (5th Cir. 2007).  The court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of federal law as determined by the Supreme Court.  Buckenberger v. Cain, 471 F. App'x 405, 406 (5th Cir. 2012) (citing Fratta, 536 F.3d at 499).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The Confrontation Clause therefore prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify,

---

[33]St. Rec. Vol. 2 of 3, record page 401, Trial Transcript (continued), 9/18/08; see also, St. Rec. Vol. 2 of 3, Hearing Transcript, record page 782-84, 4/25/12.

and the defendant had a prior opportunity for cross-examination." <u>Crawford v.</u> <u>Washington</u>, 541 U.S. 36, 53-54 (2004). While the Supreme Court in <u>Crawford</u> declined to provide a comprehensive definition of "testimonial," it did indicate that, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." <u>Id</u>. at 68. The <u>Crawford</u> Court also indicated that testimonial statements include "ex parte in-court testimony or its functional equivalent - that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." <u>Id</u>. at 51; <u>see generally</u> <u>Bullcoming v. New Mexico</u>, __ U.S. __, 131 S. Ct. 2705, 2713 (2011) (defendant has the right to cross-examine the person who actually performed testing or examination of evidence); <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305, 310-11 (2009) (expert report is "functionally identical" to testimonial statement ).

An out-of-court statement is not hearsay when offered to explain why an officer conducted an investigation in a certain way. <u>United States v. Brown</u>, 560 F.3d 754, 764 (8th Cir. 2009). Thus, such statements are non-testimonial, and therefore do not implicate the Confrontation Clause, "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation

is to enable police assistance to meet an ongoing emergency." <u>Davis v. Washington</u>, 547 U.S. 813, 822 (2006).

In this case, Harvey apparently argues that he was denied the right to confront Ramsey's cousin, who provided the name Andrew Harvey to Ramsey when he asked her for ZoomZoom's real name. Even assuming that this out-of-court statement was inadmissible or objectionable hearsay, the United States Fifth Circuit Court of Appeals has explained that a violation of the Confrontation Clause does <u>not</u> always warrant habeas relief:

> [V]iolations of the Confrontation Clause are still subject to harmless error analysis . . . To determine whether the error was harmless, we consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

(quotation marks omitted) <u>Hafdahl v. Johnson</u>, 251 F.3d 528, 539-40 (5th Cir. 2001); <u>Gochicoa v. Johnson</u>, 118 F.3d 440, 446 (5th Cir. 1997). "The determination of whether the evidence is 'crucial' or 'devastating' . . . recognizes that the erroneous admission of unreliable hearsay may nonetheless be harmless in light of other evidence at trial; by examining whether hearsay was 'crucial' or 'devastating,' the court seeks to determine whether the impermissible hearsay evidence was sufficiently damaging to the defense to

warrant reversal."  <u>Gochicoa</u>, 118 F.3d at 446-47 (citations omitted); <u>Gochicoa v.</u> <u>Johnson</u>, 238 F.3d 278, 286, 287 n.11 (5th Cir. 2000).

The particular testimony about which Harvey complains was neither crucial nor critical to establishing the elements of the crime charged or the actual verdict.  As resolved by the state trial court in the post-conviction proceeding, Ramsey's identification of Harvey as the gunman who robbed his company was distinct from the later discovery of ZoomZoom's real name.

The testimony showed that, when the car arrived at the business, Ramsey recognized the driver as Washington and one of the passengers as ZoomZoom, both of whom he knew from the neighborhood.[34]  Ramsey testified that, when the police arrived at the scene after the robbery, he told them what and who he saw, and he later gave them a written statement setting forth the same details.[35]  Ramsey also identified the gunman, ZoomZoom, from a photographic lineup provided by the police.[36]  Ramsey also pointed Harvey out in the courtroom as the man he saw rob his boss.[37]  At some point in between,

---

[34]St. Rec. Vol. 2 of 3, record pages 400-01, Trial Transcript (continued), 9/18/08.

[35]<u>Id</u>., pp. 406, 410.

[36]<u>Id</u>.

[37]<u>Id</u>., p. 407.

Ramsey called his cousin to ask her for ZoomZoom's real name, and she told him Andrew Harvey.[38]

As found by the state trial court, the relevant point was that Ramsey knew the man who robbed his boss and recognized that man from the neighborhood. Ramsey identified the man he saw in the photographic lineup, without regard for a name. Whether he knew that person as ZoomZoom or Harvey, he knew the person and readily identified him when he arrived at the place of business, as he pointed the gun at the boss's face and as he waved the gun in the air on his way to Washington's car to get away. The identification of Harvey as one of the two robbers was also confirmed by Washington, the driver of the vehicle.

Based on this trial record, the discovery of Harvey's real name and the fact that it was provided to Ramsey by his cousin was not crucial to identifying Harvey as the perpetrator and was not devastating to the defense. The denial of relief on this issue was neither contrary to nor an unreasonable application of Supreme Court law. Harvey is not entitled to relief on this claim.

## VII.   PRODUCTION OF IMPEACHMENT EVIDENCE

Harvey alleges that he made a request during the post-conviction proceedings to obtain his own criminal records from the State, together with the criminal records and

---

[38]Id., p. 401.

plea deals of Washington.  He alleges that the State failed to produce the records, and he was therefore prevented from using the information for impeachment purposes.

The record reflects that pending the evidentiary hearing, Harvey filed a post-conviction motion seeking <u>Brady</u> information related to any plea deals offered to Washington.[39]  The state trial court initially granted the discovery motion, which also included a transcript request. At a hearing held on August 27, 2008, the court reconsidered its ruling in light of the State's representations that no such deal with Washington existed.[40]

Harvey's <u>Brady</u> claim was not specifically addressed at the evidentiary hearing, although the state trial court reviewed Washington's trial testimony related to his plea and read part of it into the record.  Washington testified at trial that he had no prior felony convictions and several misdemeanor convictions for drunken driving, public intoxication and breaking a window.[41]  He also testified on direct and in cross-examination that he did not receive anything in exchange for his testimony, although his armed robbery charge was reduced to accessory after the fact.  The court denied relief on

---

[39]St. Rec. Vol. 2 of 3, record page 746, Hearing Transcript, 8/27/08.

[40]<u>Id</u>., p. 747.

[41]St. Rec. Vol. 2 of 3, record page 775, Hearing Transcript, 4/25/12; record page 417, Trial Transcript (continued), p. 9/18/08.

this claim when it denied any remaining claims not specifically addressed during the hearing.[42]

The Brady materiality determination is a mixed question of law and fact.  Cobb v. Thaler, 682 F.3d 364, 377 (5th Cir. 2012).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

In Brady, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  The duty to disclose this kind of evidence exists even though there has been no request by the defendant.  Strickler v. Greene, 527 U.S. 263, 280 (1999) (citing United States v. Agurs, 427 U.S. 97, 107 (1976)).  The prosecution's duty to disclose includes both exculpatory and impeachment evidence.  Strickler, 527 U.S. at 280 (citing United States v. Bagley, 473 U.S. 667, 676 (1985)).

Brady claims involve "the discovery, after trial of information which had been known to the prosecution but unknown to the defense."  Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994) (quoting Agurs, 427 U.S. at 103).  Thus, "when information is

---

[42]St. Rec. Vol. 2 of 3, record pages 814-15, Hearing Transcript, 4/25/12.

22

fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no <u>Brady</u> claim." <u>United States v. Brown</u>, 628 F.2d 471, 473 (5th Cir. 1980); <u>see</u> <u>Kutzner v. Cockrell</u>, 303 F.3d 333, 336 (5th Cir. 2002) (holding that <u>Brady</u> does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); <u>Rector v. Johnson</u>, 120 F.3d 551, 558-59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence). <u>Brady</u> also does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case. <u>United States v. Marrero</u>, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted).

To prove a <u>Brady</u> violation, a defendant must establish that the evidence is favorable to the accused as exculpatory or impeachment, that the evidence was suppressed by the State, and that prejudice resulted from the non-disclosure. <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004) (citing <u>Strickler</u>, 527 U.S. at 281-82). However, "[t]he prosecution is not obliged to disclose impeachment evidence unless the evidence is 'favorable to the accused.'" <u>East v. Scott</u>, 55 F.3d 996, 1005 (5th Cir. 1995).

23

Harvey has not established that he was denied access to <u>Brady</u> material. The record shows that Washington testified about his criminal history during trial. Thus, at the time of trial, the defense was made aware of Washington's criminal history. Harvey has not alleged or established that the State withheld any part of Washington's criminal history. The criminal history was presented at trial, and the jury was free to consider it in determining Washington's credibility.

Similarly, Harvey has not alleged that Ramsey had a criminal history or that the State withheld any such history that could have been used to impeach him. Even if such information did exist, Harvey has not established any prejudicial impact on the verdict. Ramsey's testimony identifying Harvey as one of the robbers was corroborated by the testimony of Tucker and Washington and the other evidence of Harvey's guilt presented to the jury.

In addition, as the state courts determined, there was no leniency deal between the prosecution and Washington in return for his testimony. This issue was thoroughly addressed during the trial testimony, and there has been no post-trial discovery of anything new or material. The state trial court gave credence to the State's representation that there was nothing else to produce, other than the trial testimony, to show that there was no deal made in exchange for Washington's testimony. That finding is entitled to deference. Harvey has not demonstrated a <u>Brady</u> violation.

The state courts' denial of relief was contrary to, or an unreasonable application of, Supreme Court law.  He is not entitled to relief on this claim.

VIII.  <u>EFFECTIVE ASSISTANCE OF COUNSEL</u>

Harvey alleges that his trial counsel provided ineffective assistance when he failed to object to the prejudicial hearsay identification testimony presented by Ramsey, failed to investigate and prepare for trial and incriminated Harvey in remarks made during closing arguments. After hearing the testimony of trial counsel at the post-conviction evidentiary hearing, the state trial court denied Harvey's claim as meritless.  The higher state courts also denied relief without further comment.

The issue of ineffective assistance of counsel is a mixed question of law and fact. <u>Clark v. Thaler</u>, 673 F.3d 410, 416 (5th Cir. 2012); <u>Woodfox v. Cain</u>, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  <u>Id</u>., 466 U.S. at 697.  The Supreme Court first held that "the defendant must

show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 792 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 788. The Harrington Court

went on to recognize the high level of deference owed to a state court's findings under

Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."

Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009)). This court must therefore apply the "strong

presumption" that counsel's strategy and defense tactics fall "within the wide range of

reasonable professional assistance." Strickland, 466 U.S. at 690; Moore v. Johnson, 194

F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless

clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d

303, 309 (5th Cir. 2008); Moore, 194 F.3d at 591. In assessing counsel's performance,

a federal habeas court must make every effort to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S.

27

at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.    Failure to Object to Ramsey's Hearsay Testimony

Harvey contends that his counsel was ineffective when he failed to object to Ramsey's hearsay testimony about the identification information, i.e. ZoomZoom's real name, he received from his cousin.  The state trial court denied relief on this issue for the same reasons it was rejected as a Confrontation Clause challenge.[43] As discussed above, Harvey has not shown any prejudice arising from Ramsey's statement as to how he learned Harvey's real name.  The identification made by Ramsey was visual.  It was based upon Ramsey's personal knowledge of Harvey's physical appearance and after he saw Harvey before, during and after the robbery. Ramsey also confirmed the identification in open court.  Thus, even if the testimony was hearsay, Harvey has not established any prejudice resulting from counsel's failure to object to it.  The state courts' denial of relief on this claim was not contrary to Strickland.

---

[43]St. Rec. Vol. 2 of 3, record pages 791-92, Hearing Transcript, 4/25/12.

B.    Failure to Investigate and Prepare

Harvey also contends that his trial counsel failed adequately to investigate and prepare for trial. Specifically, Harvey argues that his counsel did not adequately prepare to discredit and impeach Washington, who claimed to be less culpable of the crime. Harvey also claims that his counsel should have used Ramsey's initial statements in the police report to better establish for the jury that Washington did not have a license plate on his car, tending to show his culpable state of mind.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown. Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Rather, to prevail on such claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir.

29

2005); <u>Davis v. Cain</u>, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Harvey essentially argues that his counsel should have done a better job of challenging Washington's credibility and showing Washington's culpability based on his criminal justice background and Harvey's pretrial statements to police.  The record reflects that the State questioned Washington about when he realized that he had become involved in a crime.[44]  Harvey's counsel thereafter focused his cross-examination of Washington on the details of the reduction of his charge from armed robbery to accessory after the fact,[45] a clear attempt to discredit his testimony.  Contrary to Harvey's conclusion, his counsel also specifically questioned Washington about his criminal justice degree.[46]

In addition, at the state court post-conviction relief evidentiary hearing, it was established that Harvey's counsel received the police reports before trial.  Counsel testified that he did not perceive inconsistencies in the statements made by Ramsey.[47] Counsel also had questioned Ramsey at trial about the particular events during the

---

[44]St. Rec. Vol. 2 of 3, record pages 413-16, Trial Transcript (continued), 9/18/08.

[45]<u>Id.</u>, pp. 419-20.

[46]<u>Id.</u>, p. 420.

[47]St. Rec. Vol. 2 of 3, record pages 809-12, Hearing Transcript, 4/25/12.

robbery and focused the cross-examination on challenging Ramsey's identification of Harvey as a participant in the robbery.

As the state trial court noted, Washington's culpability was not on trial and Ramsey's statements to police were not inconsistent with what he testified happened during the robbery. Ramsey was not asked about what he saw during the chase <u>after</u> the robbery, an event that was not particularly material to proving the robbery itself. The jury heard testimony about Washington's admitted guilt as an accessory and about the events leading up to and during the robbery. Harvey has not demonstrated a basis for his counsel to have questioned Ramsey any further about the robbery. As such, he has not established that his counsel acted deficiently or prejudicially in challenging the overwhelming evidence pointing to Harvey's guilt.

Harvey has not established either prong of the <u>Strickland</u> test, and the state courts' denial of relief was not contrary to or an unreasonable application of <u>Strickland</u>. Harvey is not entitled to relief as to his claim of ineffective assistance of counsel.

C.     <u>Prejudicial Closing Argument</u>

Harvey alleges that his counsel was ineffective when, during closing arguments, he admitted to the jury that Harvey committed a robbery, while also strenuously arguing that it was <u>not</u> with a dangerous weapon and thus did <u>not</u> constitute the more serious

31

charged offense of <u>armed</u> robbery.[48] He contends that counsel erred in trying to convince the jury to find Harvey guilty of the lesser offense of first degree robbery, when Harvey had maintained his innocence and did not consent to such a strategy. The state trial court denied relief, finding counsel's actions sound strategy in light of the severity of the charge and the eyewitness testimony establishing Harvey's guilt.[49]

Harvey's counsel testified at the state court post-conviction relief evidentiary hearing that, based on the strong evidence against Harvey, he and his client had discussed pursuing a plea to the lesser offense of simple robbery (or first degree robbery) before trial.[50] Counsel stated that, although the plea discussion was rejected by the State, he continued at trial to pursue that strategy to get a verdict as to the lesser offense only.

In light of the overwhelming evidence placing Harvey not only <u>at</u> the scene of the robbery but also identifying him as the gun-wielding robber, the record supports the state court's conclusion and counsel's representation that his closing comments were part of an overall sound trial strategy concerning a less serious offense than the actual offense charged. Such a finding was not inconsistent with <u>Strickland</u>. <u>See</u>, <u>e.g.</u>, <u>United States v. Short</u>, 181 F.3d 620, 624-5 (5th Cir. 1999) (counsel's statements, which did not admit

---

[48]<u>Id.</u>, pp. 444-46 (defense counsel's closing argument).

[49]<u>Id.</u>, pp. 799-800, 802, 808.

[50]<u>Id.</u>, pp. 806-08.

guilt, but which implicated the defendant, were reasonable in light of the overwhelming evidence presented at trial); <u>Lingar v. Bowersox</u>, 176 F.3d 453, 458 (8th Cir.1999) ("we conclude the decision to concede guilt of the lesser charge of second-degree murder was a reasonable tactical retreat rather than a complete surrender."); <u>Underwood v. Clark</u>, 939 F.2d 473, 474 (7th Cir. 1991) (defense counsel's concession during closing arguments of a lesser included offense was "a sound tactic when the evidence is indeed overwhelming . . . and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury."); <u>McNeal v. Wainwright</u>, 722 F.2d 674, 676 (11th Cir. 1984) (attorney's statements conceding manslaughter were tactical and did not constitute a forced plea).  Harvey is not entitled to relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Harvey's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[51]

New Orleans, Louisiana, this ____18th____ day of November, 2013.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[51]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

34